**PALERMO v. UNITED STATES.**

No. 9406.

Circuit Court of Appeals, Eighth Circuit.

Aug. 29, 1932.

Rehearing Denied Oct. 18, 1932.

Harry W. Durall and Samuel Feller, both of Kansas City, Mo., for appellant.

A. B. Lovan, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., and S. M. Carmean and George H. Hubbell, Asst. U. S. Attys., all of Kansas City, Mo., on the brief), for the United States.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

This is a proceeding by scire facias on a bond forfeiture in a criminal case entitled "United States v. Harry Schwartzberg." The clerk issued a writ of scire facias as an independent proceeding entitled "United States, Plaintiff, v. Harry Schwartzberg and Frank Palermo, Defendants." The defendant Palermo filed an answer alleging that he should be discharged from his obligations on the bond given for the appearance of Schwartzberg, for the reason that Schwartzberg appeared in court pursuant to the terms of the bond and entered a plea of guilty, and that thereafter, and on account thereof, the appellant as bondsman had no further obligation; that no action for the forfeiture of the bond was declared during the November term of court, and therefore the court had no jurisdiction to declare a forfeiture of the bond or render judgment against the appellant at any subsequent term.

In addition to the answer, appellant filed a motion to dismiss in the nature of a demurrer on the ground that the writ did not state facts sufficient to constitute a cause of action, and further that the recognizance at the time of the forfeiture had no vitality.

Harry Schwartzberg was charged with unlawfully concealing assets of a bankrupt estate in violation of the National Bankruptcy Act of the United States (section 29b, 11 USCA § 52(b). The appellant, Palermo, was surety upon the recognizance of Schwartzberg, the pertinent provisions of which are as follows:

"The condition of this recognizance is such, that if the said Harry Schwartzberg, principal, shall personally appear before the District Court of the United States in and for the Western District of Missouri, on the 24th day of December, 1928, to be begun and held at the city of Kansas City at 9:30 o'clock A. M., and from time to time thereafter, to which this cause may be continued and then and there answer the charge of having, on or about the 29th day of February, A. D. 1928, within said district, in violation of National Bankruptcy Act of the United States, unlawfully concealed assets of bankrupt estate, and then and there abide the judgment of the said court, and not depart without leave thereof, then this recognizance to be void, otherwise to remain in full force and virtue."

The bond was executed on December 18, 1928, and filed December 27, 1928. There was no term commencing December 24, 1928, but the November term was then in existence. On February 19, 1929, during the said November term, Schwartzberg appeared in court waiving arraignment and entered a plea of guilty. Sentence was taken under advisement and deferred from time to time until May 25, 1929, when defendant Schwartzberg was called and failed to appear for sentence. The court ordered forfeiture of the bond and scire facias issued.

The November term had ended before May 25, 1929, and the bond was forfeited during the April, 1929, term, which was the term immediately subsequent to the November term. Certain records of the clerk were incomplete and did not contain all the proper entries of the orders of continuance which had theretofore been made from time to time. On application of appellee, the court found that the clerk of court had "by mistake and inadvertence omitted from the said record certain entries which should

have been made or shown by the original minutes of the court and of the clerk." The clerk was directed by the court to make certain entries nunc pro tunc. The only purpose of the order was to correct the record of the court so that it would conform to the facts. No notice of such proceeding was required to be given to the surety. The right of the court to have its records correctly show what occurred cannot be questioned, and we find no merit in appellant's contention that he was prejudiced by this order.

There are only two questions to be considered on this appeal. First, Did the plea of guilty on February 19, 1929, end the liability of the surety on this bond? Second, Did the bond have any vitality during the April, 1929, term, when it was forfeited?

■ The conditions of a bail bond given in United States courts are generally governed by the laws of the state in which the court is located. Section 591, c. 17, title 18, USCA; National Surety Company v. United States (C. C. A.) 29 F.(2d) 92; United States v. Ewing, 140 U. S. 142, 11 S. Ct. 743, 35 L. Ed. 388. This bond must be construed in light of the language of the following Missouri Revised Statutes 1929:

"Sec. 3486. *Bail, When to be Taken.* If the offense with which the prisoner is charged be bailable, and the prisoner offer sufficient bail, a recognizance shall be taken for his appearance to answer the charge before the court in which the same is cognizable, on the first day of the next term thereof, and not to depart such court without leave, and thereupon he shall be discharged."

"Sec. 3466. *Judgments on Recognizances Shall Not be Defeated, When.* No proceeding upon a recognizance shall be defeated, nor shall judgment thereon be prevented or arrested, on account of any defect of form, omission of recital, condition of undertaking therein, neglect of the justice or clerk to note or record the default of any principal or surety at the time or term when such default shall happen, or of any other irregularity, so that it be made to appear from the whole record or proceeding that the defendant was legally in custody, charged with a criminal offense, that he was discharged therefrom by reason of the giving of the recognizance, and that it can be ascertained from the recognizance that the sureties undertook that the defendant should appear before a court or magistrate at a term or time specified for trial. (R. S. 1919, § 3811.)"

"Sec. 3584. If, without sufficient cause or excuse, the defendant fails to appear for trial or judgment, or upon any other occasion when his presence in court may be lawfully required, according to the condition of his recognizance, the court must direct the fact to be entered upon its minutes, and thereupon the recognizance is forfeited, and the same shall be proceeded upon by scire facias to final judgment and execution thereon, although the defendant may be afterward arrested on the original charge, unless remitted by the court for cause shown." Mo. St. Ann. §§ 3466, 3486, 3584.

■ The cases bearing upon the liability of bondsmen are legion. Close study must be made of the local statutes and the terms of the bond in order to avoid confusion. The appellant in this case entered into a contract with the government. He became at his own voluntary choice the custodian of the defendant Schwartzberg, instead of the government; and, in order to make his custody effective, he entered into a pecuniary obligation. Now, then, what did he agree to do? First, that the principal, Harry Schwartzberg, should appear on December 24, 1928, and from time to time thereafter to which the case may be continued and answer the charge of unlawfully concealing assets of a bankrupt estate. Second, that the said principal should abide the judgment of the court, third, that the said principal should not depart without leave of the court.

The surety bound himself under this obligation not only to guarantee the appearance of the principal on the date set forth in the bond and the continuance thereof, but also that he should abide the judgment of the court and should not depart without leave thereof.

"Bail bonds vary somewhat in the form of the condition. Some require the principal to 'appear and answer to the Information and not depart without leave.' Others contain the further proviso that the principal will 'abide the judgment and orders of the court.' Where the bond is drawn in the former terms the principal is not required to abide the judgment and sentence of the Court as his appearance before the Court, together with his entering a plea of guilty to the offense charged in the Information, thereby putting himself in the power and control of the Court, satisfied the conditions of the bond. Where the latter terms are used the obligation does not terminate with conviction but the defendant must abide the

judgment thereon and the recognizance is forfeited if he absents himself without being discharged." 3 Ruling Case Law, § 46, p. 40.

"There is a legal requirement for the appearance of the accused after conviction where the condition of the bond or recognizance is not to depart without leave of court or to abide the order and judgment of the court, or both, or that accused shall render himself in execution. * * *" 6 Corpus Juris, p. 1036, § 297.

The appellant cites the case of State v. Charles, 207 Mo. 40, 105 S. W. 609, 13 Ann. Cas. 565. In that case the recognizance provided: "Comes the defendant, Roy Charles, as principal, and Frank Yehle and James A. Charles, as securities, and jointly and severally acknowledge themselves to owe the state of Missouri the sum of one thousand dollars, conditioned that the said Roy Charles shall personally be and appear on the first day of the next term, of this court, to be held at Carrollton, on the third Monday in April next, 1905, to answer and defend the information filed, charging him with embezzlement, and not depart the court without leave, then this recognizance to be void."

The defendant, Roy Charles, appeared on the first day of the April, 1905, term on April 20th, and on that day he waived formal arraignment and entered a plea of guilty. Afterwards, on April 27, 1905, the prosecuting attorney moved for sentence, and the defendant Charles was duly called and made no appearance and was defaulted, and writ of scire facias was issued. The court held that, upon entering the plea of guilty, the defendant had fully satisfied the conditions of his bond "to answer and defend the information," and that "appearance of the principal before the court, entering his plea of guilty to the offense charged in the information, thereby putting himself under the power and control of the court, substantially met and satisfied the conditions of the bond, which required him to 'appear and answer the information.'"

It is apparent that the wording of the bond in the instant case clearly differentiates it from the Charles decision. In fact, the court in the Charles Case refused to read into the bond the very language that is found in the bond now under consideration. On page 613 of 105 S. W., 207 Mo. 40, in the Charles Case, the court said: "We are unwilling to say that the conditions of a bond 'to answer and defend the information'

should be construed to mean that the principal shall not only answer and defend the information by entering a plea of guilty or standing a trial and having a verdict of guilty returned against him, but that he shall abide the judgment and sentence of the court."

The appellant in this case was not only required to answer and defend the information, but, in addition, was obligated to abide the judgment of the court and not depart without leave thereof. This significant language is omitted from the bond in the Charles Case. There is no implication in the instant case that, upon entering a plea of guilty, the defendant Schwartzberg was placed in the custody of the marshal. The contrary appears from the facts.

A situation somewhat similar to that now presented came before the Circuit Court of Appeals, Sixth Circuit, in the case of Detroit Fidelity & Surety Company v. United States, 36 F.(2d) 682. There, as here, the bond was conditioned that the principal should abide the order and judgment of the court, and not depart the court without leave. On page 683 of 36 F.(2d) the court uses the following language: "The phrase 'abide by' means to adhere to; to submit to; to obey; to accept the consequences of. Order of United Commercial Travelers v. Smith (C. C. A. 7) 192 F. 102; Webster's New International Dictionary. The verb 'abide' may also have the same meaning, if, from the connection in which used, it clearly signifies more than passive waiting. The phrase 'abide the order and judgment of the court,' in the bond, is followed by the phrase 'and not depart the court without leave thereof,' thus, we think, making it clear that the verb 'abide' was used in the broader sense, and as an addition to the phrase which forbade unauthorized departure, though such addition might not have been necessary, to justify the conclusion we reach."

The court in Ewing v. United States (C. C. A.) 240 F. 241, had under consideration the terms of a bond comparable to the present one, and on page 254 of that decision in 240 F., the following statement is made:

"The bond was to be void if the principal should make his appearance before the District Court 'then and there to answer,' etc., 'and continue in attendance at said term of said court from day to day and term to term until discharged, and abide the decision of the said court in the premises.' When the accused was convicted by the verdict of the jury, he was, upon the statement of his coun-

sel that a motion for a new trial would be filed, and upon his counsel's request in his presence, instead of being remanded into the custody of the marshal, permitted to go upon his old bond; the court being of opinion that it was a 'continuing' bond. If the court had pronounced sentence, a different question might be presented, or, if the court had ordered the defendant into the custody of the marshal, perhaps the question would not be in legal effect the same as the question under consideration. But in this case the accused was not discharged, nor did he 'abide the decision' of the court, since no judgment was rendered on the verdict, or upon the motion for a new trial.

"Whether or not, on principles of estoppel, applied also to this phase of the case, the surety could be held, need not be decided; for, under the terms of the bond as given, the responsibility of the surety was not brought to an end and completed by the conviction itself. The Supreme Court of Tennessee (Suggs v. State, 129 Tenn. 498, 500, 167 S. W. 122, 123) discuss the difference between the rights and obligations of the surety after conviction, but before sentence, and after sentence, and say: 'Where a bail bond stipulates that the principal is not to depart without leave of the court, the sureties are not exonerated by the mere conviction of the principal. * * * But when a conviction is followed by a pronouncement of sentence, such pronouncement, it has been held, has the legal effect of a direction to the sheriff to hold the convicted defendant in custody, and operates to exonerate the sureties.'

"A number of cases are cited in support of each of these conclusions. No case has been cited, and we have found none, in which, upon a mere conviction, without sentence pronounced thereupon, it has been held that the custody of the accused passed from the surety to the officer who, under the law, would take the accused into his custody."

■ A plea of guilty had been entered by the defendant Schwartzberg, but no judgment of the court had been entered on that plea. The defendant agreed to await and accept the penalty that the court was to impose as the result of the conviction by a plea of guilty. He appeared in court from time to time thereafter, and consented to the deferment of the sentence. It may be that one of the purposes of bail bonds is to insure the defendant's presence for trial, or until a plea of guilty has been entered. Some bonds are drawn merely to cover that contingency; but, unless we desire to ignore the plain,

unambiguous language of this bond, it is clear that the appellant agreed to do something more than to merely produce the defendant Schwartzberg to answer the charges made against him. It is true that bail bonds should be construed with reasonable strictness. A surety should not be required to fulfill any conditions that he did not covenant to perform, but the court should not close its eyes to the reasonable intendment of the language employed by the contracting parties when the surety agreed to become the custodian of the defendant instead of the government. At least, we should not be confused by any fiction that, upon a plea of guilty being entered, this defendant was lodged in the arms of an awaiting marshal, when the facts are that he was ordered to appear on a subsequent day and abide the judgment of the court, and not depart without leave thereof. The sureties cannot complain of such a construction. If the risk is greater in providing bail for one after conviction, the appellant must have taken that fact into consideration when he became surety on the bond in question, and covenanted to perform the conditions thereof.

■ The second question raised by the appeal requires reference to sections 3466 and 3584, Revised Statutes of Missouri, and the construction thereof by the Missouri decisions. Appellant strenuously contends that this bond had lost its force and effect before the April, 1929, term; that the surety only agreed that Schwartzberg should appear and answer the charges that were made against him at the November, 1928, term. Consequently, it is appellant's contention that, when that term expired without a default and forfeiture of the bond, it lost its validity, and the attempted forfeiture at the April, 1929, term was nugatory. Appellant refers us to United States v. Mace (C. C. A.) 281 F. 635, 636. This case came from the District Court of Nebraska. The statute of that state having reference to bonds is quite similar to the Missouri statute. The Nebraska statute (Rev. St. 1913, § 8957) requires the bond to be conditioned that the accused appear forthwith before the District Court, if then in session, and, if not, on the first day of the next term thereof. It further provides that "no recognizance requiring the accused to appear at the next term of court shall be rendered invalid by the fact that the court is in session." It will be noted that the Missouri statute does not provide for a forthwith bond, but it has been held that under this statute a forthwith

bond is not void. See State v. Allen, 275 Mo. 391, 204 S. W. 721. With that construction of the Missouri statute, it would appear that a magistrate in Missouri is authorized under the statute to take a forthwith bond, and the authority of a magistrate to take bonds is substantially the same in Missouri as in Nebraska.

The bond in the Mace Case provides as follows: "The condition of this recognizance is such, that if the said Joseph Chenoweth, principal, shall personally appear before the District Court of the United States in and for the district aforesaid, on the 1st day of the term to be begun and held on the 29th day of July, 1918, at ten o'clock a. m., and from time to time thereafter to which the case may be continued, and then and there answer the charge of having .* * * and then and there abide the judgment of said court, and not depart without leave thereof, then this recognizance to be void, otherwise to remain in full force and virtue."

The defendant in the Mace Case was required to appear on the first day of the term to be begun or held on July 29, 1918. The bond itself is somewhat ambiguous, because the first day of the term did not begin on July 29, 1918, but at that time the April term of court was in session. No appearance was made by the defendant Chenoweth during the April, 1918, term, and no forfeiture of his bond was ordered during that period. He was not indicted until September 21, 1918. The new term commenced September 27, 1918. Chenoweth's first appearance in court to answer the charge was on October 22, 1918, during the September term, when he entered a plea of not guilty. On December 19, 1918, the case was called for trial and Chenoweth did not appear and the bond was forfeited. It was held by the court that this bond applied only to the term of court then in session—the April, 1918, term—and limited its life to that term. Judge Kenyon, on page 639 of the decision in 281 F., stated: "Taking the language of the bond literally, and in the light of section 382 of the Nebraska Criminal Code herein set forth, the bond can be construed in no other way than to require the appearance of the defendant forthwith at the term of court then in session. If the bond does not mean this under the Nebraska statute it has no meaning. It is to be observed that this term continued for several months after the time of taking this bond, and the defendant Chenoweth was indicted at that term. The provision of the bond that, 'and

from time to time thereafter to which the case may be continued, * * * and then and there abide the judgment of said court, and not depart without leave,' refers to the April term of the court."

It is highly significant that in the Mace Case there was no appearance by the defendant during the term to which the bond was returnable. The defendant was not called during that term. There were no proceedings during that term in the case against the defendant Chenoweth except the return of the indictment, and the court made no order with reference to any continuance of the matter from the April to the September term. The surety covenanted to produce the defendant Chenoweth at the April, 1918, term and from time to time thereafter to which the case may be continued. The case was not continued during the April term. This court held that, in view of the Nebraska statutes and the contract of the parties, the bond had no life during the subsequent term. In the instant case, however, the defendant did appear, and by a plea of guilty answer the charge during the term to which the bond was returnable. There can be no question but that the bond had vitality at the time a plea was entered, and at that time the defendant was ordered by the court to appear at the subsequent term in order that judgment might be imposed on the answer that he had made to the charge referred to in the bond. It is difficult to understand why it should be seriously contended that the court had lost jurisdiction to forfeit this bond when it appears that Schwartzberg failed to do that which the defendant explicitly covenanted he would do,—abide the judgment of the court and not depart without leave thereof.

It must be borne in mind that each state has by statute provided the conditions of recognizance of bail. The cases from the various states construe their own statutes and define the extent of the obligation under the particular practice involved. The conflict in the state decisions and in some of the federal decisions is therefore more apparent than real.

The Mace Case was concerned with the Nebraska statutes and Nebraska decisions. The difference in the facts, coupled with the remedial statutes of Missouri and the decisions construing the same, prompts us to the conclusions herein expressed.

The Commissioner had a right under the Missouri statute, as construed by State v. Allen, supra, to accept either a forthwith

bond or one returnable to the next term. This bond merely provided that the defendant was required to appear on December 24, 1928, and from time to time thereafter to which the cause may be continued. It makes no reference to any term of court. It is not limited by its terms to any certain court term. In view of the Missouri statutes, no good reason suggests itself to us why there should be any restrictions read into the bond to limit its vitality to the November term of court.

The case of St. Louis v. Henning, 235 Mo. 44, 138 S. W. 5, discusses some of the earlier Missouri cases and the effect of section 3466, Revised Statutes of the State of Missouri, on the question of liability of bondsmen. On page 55 of that decision in 235 Mo., 138 S. W. 5, 8, is found the following: "This section [section 3466] well repays a careful reading. It was a new section in the Revised Statutes of 1879, being section 2077 of that revision. It provides that judgment for forfeiture shall not be prevened on account of any omission of recital or condition, so that it appears from the whole record or proceeding that the defendant was legally in custody, charged with a criminal offense, that he was discharged therefrom by reason of the giving of the recognizance, and that it can be ascertained from the recognizance that the surety undertook that the defendant should appear before a court or magistrate at a term or time specified for trial. * * * That this section made such a recognizance an obligation that the defendant would remain subject to the order of the court until his trial should take place or he should otherwise be finally discharged seems to have been the opinion of this court whenever the question has been presented to it, as is shown by the following cases."

An early case in Missouri decided before the passage of section 3466—State v. Mackey, 55 Mo. 51—refused to sustain a forfeiture of a bond where the defendant entered into a recognizance with one Thompson as surety to appear at the next (September) term of that court for trial, and not depart without leave. The defendant appeared at the September term, and the case was continued on motion of the prosecuting attorney. At the next subsequent April term, the defendant failed to appear, and his bond was forfeited and writ of scire facias issued. On page 55 of 55 Mo. the court stated: "If the defendants appeared at the October term in the year 1868, as required by the bond, and

remained in court the whole term, ready to obey the order of the court until the term was adjourned, and no measures were taken by the court to commit the defendant or otherwise secure his appearance at any subsequent term of the court, upon the adjournment of that term of the court, the bond or recognizance would become discharged and of no further effect and could not be forfeited by the failure of the defendant to appear at some subsequent term of the court."

The Mackey Case was considered in State v. Morgan, 124 Mo. 467, 28 S.W. 17, 20. The recognizance in the Morgan Case was conditioned that the defendant should appear in the Supreme Court at the April, 1891, term "to receive judgment in the appeal and in this court if the Supreme Court shall so order, and at such time and place as such court shall direct and that he will render himself in execution and obey every order and judgment which shall be made in the premises." The recognizance was forfeited December 13, 1892, for failure to appear at that term, and the defense was made that the defendant was only bound by this undertaking to appear at the April term. The court, however, sustained the judgment against the bondsmen, and stated: "But, if there were any doubt in regard to the views herein expressed, there cannot be when section 4380, Rev. St. [1889] [this statute is the same as section 3466], is taken into consideration. * * * This statute was first enacted in 1879, and was therefore not in force at the time the case of State v. Mackey, supra, was decided, and was evidently enacted to change the law, as therein announced, that cognizors might not escape liability upon mere technicalities, which in no way could possibly injuriously affect their rights."

The court in the case of St. Louis v. Henning, supra, after making a digest of several Missouri cases, uses the following language on page 58 of 235 Mo., 138 S. W. 5, 9: "It is held in all these cases that, when the sureties undertake that the defendant shall appear before a court or magistrate at the term specified for trial, their obligation is that he shall remain in court for all the purposes of his case, and that a new undertaking is no more necessary than is a new summons to toll the civil defendant into court at each successive term. It is a most reasonable thing to require, and the words of the section call for such a construction. There is no reason why, when one charged with crime passes by his own choice from the custody of the law to the beneficent cus-

tody of his friends, the new relation ought not to be as broad as the old, or the friends should not, to the extent of their pecuniary undertaking, assume a responsibility as extensive as that of the officer whom they supersede."

State v. Allen, supra, referring to section 3466, states: "This statute is as much a part of that authorizing the giving of bonds or recognizances as if incorporated into the text of the latter. In fact, to accomplish its purpose it should be read into that statute in construing same. Thus read, it eliminates from consideration any contention as to a literal interpretation, and leaves as essentials to determine the sufficiency of the obligation the legal custody of the accused, to be ascertained from the entire record, his discharge by reason of the giving of the obligation, and that he thereby agreed and his sureties bound themselves that he would appear before the court for trial at a time or term specified."

The court had authority to continue this case from the November term to the April term. It did not lose jurisdiction. No judgment had been entered. The bond by its terms anticipated that continuances might be granted from time to time. It is common experience that, in order to do justice to one who has pleaded guilty, the court is often required to have investigations made in order that an intelligent disposition may be made of the case, or circumstances may appear which justify a continuance in the interest of the government as well as the defendant.

In the case of Mintie v. Biddle (C. C. A.) 15 F.(2d) 931, 932, the court stated: "We have no doubt that, after a plea of guilty or after conviction of one guilty of a crime, sentence may be deferred at convenience till some day, or any day in the current term. This is so, because the court ordinarily retains jurisdiction over its judgments for the current term in all cases. Nor have we any doubt that sentence may, in furtherance of the administration of justice, be deferred to some day in the next term or even to some definite time in the second succeeding term (Ex parte United States, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355), by an order made in the case (Miner v. United States, 244 F. 422, 157 C. C. A. 48, 3 A. L. R. 995; Ex parte Singer [C. C. A.] 284 F. 60)."

Schwartzberg was discharged from custody by reason of this recognizance, and the surety, Palermo, covenanted that he would not only appear for trial, but also for judgment. He failed to appear and abide the judgment of the court, and the surety must respond in the pecuniary obligation of his recognizance.

In accordance with the views herein expressed, the judgment of the lower court must be, and is, affirmed.