## UNITED STATES v. COCHRAN.

### No. 678.

Circuit Court of Appeals, Tenth Circuit.

Jan. 23, 1933.

Rehearing Denied Feb. 23, 1933.

COTTERAL, Circuit Judge, dissenting.

W. F. Rampendahl, U. S. Atty., and Philas S. Jones, Asst. U. S. Atty., both of Muskogee, Okl., T. J. Williamson, Ins. Atty., William Wolff Smith, Sp. Counsel, and W. C. Pickett, Atty., Veterans' Administration, all of Washington, D. C., for the United States.

Alger Melton and Adrian Melton, both of Chickasha, Okl., for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

This is an appeal from a judgment on a War Risk insurance policy. The soldier, Grover Cochran, enlisted September 19, 1917, went overseas and was honorably discharged on February 14, 1919. His policy lapsed on March 31, 1919 because of non-payment of dues, unless on that date he was totally and permanently disabled so that he could not then and thereafter engage continuously in any substantially gainful occupation. After he returned he had a barber shop at Burkburnett, Texas. His brother, now his guardian, did not see him when he came home, but saw him at the barber shop in the fall of 1919. His brother was there part of a day and thought the soldier did not look very well. We next hear of him on a forty-acre farm in Oklahoma, in January 1920. He bought material and improved it, paid for what he got, and the testimony of those with whom he dealt shows that he acted as an ordinary young man would act. There was nothing that showed he was mentally unbalanced. One witness who knew him before he went to war testified he observed no change in him on his return. There was no substantial testimony of laymen to the contrary. He married, lived on the farm and raised corn, cotton and hogs in 1920 and 1921. His brother says he did good work. But in the late summer or fall of 1921, his brother who lived only a quarter mile away learned he was doing strange things and that he was using intoxicants. He was taken to a hospital and in February 1923 he was admitted to the Oklahoma Asylum for the insane where he was confined at the time of trial. Taking the testimony of all the laymen, including the soldier's brother, it wholly fails in our opinion to afford any basis for a finding that he was totally and permanently disabled on March 31, 1919 and for two and a half years thereafter, either in body or mind.

The plaintiff offered two doctors, specialists in mental diseases, one from each of the institutions to which the soldier was taken.

Each testified the soldier was suffering from dementia præcox of the paranoid type, that it was with him from birth; one of them, that outward indications of it appear "about 18 to 25 years of age, some of them later on in life than that," and that if the soldier "had been allowed to follow his ordinary policy of life in the country he might have gone through life without developing it," that he thought the soldier was insane while he was in the military service. The other doctor first said the soldier had dementia praecox when he entered the service, but he modified that by saying, "He had the foundation. He had the constitutional defect." The first doctor also said there are lots of people on the street "today" who are praecox. Taking this expert testimony with all the weight that can be possibly given to it and weigh it with all the other testimony, and we think it wholly fails to sustain the indispensable conclusion that the soldier was on March 31, 1919 or at any time thereafter for two years totally and permanently disabled, unless we substitute for insanity in fact a predisposition to insanity. Total and permanent disability are plain, simple words; they must be accepted in their common, practical sense; they mean that the disability of mind or body is such as to render it impossible for the sufferer to follow continuously any substantially gainful occupation. Here the proof affirmatively shows that on March 31, 1919 the soldier's mind and body were not in that disabled condition, and that for more than two years thereafter he did continuously follow gainful occupations. See United States v. Harth (C. C. A.) 61 F. (2d) 541.

Reversed and remanded.

COTTERAL, Circuit Judge (dissenting).

My disagreement is based on the ground that no reversal is allowed for an error of fact where a trial by jury is waived, as was done in this case. Stinson v. Business Men's Association (C. C. A.) 43 F.(2d) 312. It is true of course that if there is no substantial evidence on which a finding is based, only a question of law is presented. But there was the testimony of Doctor Griffin that the appellee was totally and permanently disabled when he left the service. That was a month and some days before his policy lapsed. The majority opinion appears to review the evidence. The concession may be made that it strongly preponderates against appellee. But this court has no authority to reverse the judgment on that ground.