## GRAY v. UNITED STATES.
### No. 10009.

Circuit Court of Appeals, Eighth Circuit.
March 9, 1935.

Fadjo Cravens and C. W. Knott, both of Fort Smith, Ark., for appellant.

John E. Harris, Asst. U. S. Atty., of Fort Smith, Ark. (Clinton R. Barry, U. S. Atty., of Fort Smith, Ark., and Will G. Beardslee, Director, Bureau of War Risk Litigation, and J. Gregory Bruce, Atty., Department of Justice, both of Washington, D. C., on the brief), for the United States.

Before WOODROUGH, Circuit Judge, and FARIS and DONOHOE, District Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by the guardian of John James Gray, an insane veteran of the World War, from a judgment dismissing his suit upon a policy of war risk insurance. The only question for review is whether his showing of total and permanent disability during the life of the contract was sufficient. The trial court held it was not and directed a verdict for the government at the close of the plaintiff's evidence.

The insurance was kept in force until January 30, 1919, and lapsed on that date unless the insured was then totally and permanently disabled.

A qualified physician examined him in the spring of 1920 and found him suffering from dementia praecox. He had delusions of people plotting against him and trying to do him harm—wiring his room with electricity and trying to kill him in that way—the doctor could not recall all of his delusions. The symptoms were such that in the opinion of the doctor the disease had also been present in the veteran in January, 1919. It was a progressive and incurable disease and it was reasonably certain that the veteran could not recover from it. There was, accordingly, a prima facie showing of some disability, permanent in character, existing during the life of the policy and there remains only the question whether there was sufficient evidence that such disability was total.

The physician testified without objection that in his opinion the veteran was totally disabled within the life of the policy in that he was then unable, by reason of his mental condition, to continuously follow any substantially gainful occupation. He said on cross-examination that during lucid intervals the patient might have worked as a janitor or to take care of lawns, "but I don't believe in a dependable way." From other witnesses it was developed that while the veteran was still in the Army and shortly before

234

his discharge he wrote a letter to a comrade described as not having any meaning whatever. A sentence would start and stop before it had any meaning and another would start. There was about a page of it and his name was signed to the bottom. As soon as he came home, possibly within a week after his discharge, his father says the son tried to move dirt with a team and slip and was unable to drive the team or keep out of the way and he would dump the slip too soon, though he had been familiar with such work. Concerning the same period, a witness says that the veteran "talked very irrational. He would talk about hiding out, going to a cave somewhere, said the officers were after him." He would stand about—staring at the pavement most of the time. He would sit for hours staring into space. The chief of police in Fayetteville, Ark., knew Gray before he enlisted in the Army and saw him very often after his return. He watched him as an officer and says, "His mind seemed like it would just leave him." As an officer, he "picked the veteran up and called his folks to come and get him." His condition grew steadily worse after his return from the Army and in 1924 he was sent to the hospital in Little Rock and was confined there remaining until 1926 when he was furloughed until 1932. Since 1932, he has been confined. There seems little doubt that since the time in 1924 when the veteran had to be confined, his impairment of mind has been such that he has been totally and permanently disabled.

There was testimony that the veteran did not follow any substantially gainful occupations during any extended period after his discharge. He did some little work with his brother cutting milo-maize heads and picking a little cotton. He worked a few hours for a lumber company and the longest employment was three months as a janitor.

Although the testimony adduced concerning details of the behavior of the veteran and the conduct of his life between January, 1919, and 1924 is extremely meager, we think the trial court erred in sustaining the motion of the government to direct a verdict.

It was proven that dementia praecox steadily encroached upon the man's mind and destroyed it, ultimately rendering him totally and permanently disabled. Just when the line was crossed between the partial and total disability and whether that was before or after January, 1919, was for the jury. On another trial the physician should not be asked or permitted to state his conclusions on the whole case. United States v. Spaulding, 293 U.'S. 498, 55 S. Ct. 273, 79 L. Ed. ——, January 7, 1935.

Reversed.