**UNITED STATES v. PRITCHARD.**

No. 1604.

Circuit Court of Appeals, Tenth Circuit.

March 24, 1938.

620

Thomas E. Walsh, of Washington, D. C. (Summerfield S. Alexander, U. S. Atty., and R. T. McCluggage, Asst. U. S. Atty., both of Topeka, Kan., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., and Young M. Smith, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

Claude I. Depew, of Wichita, Kan. (W. E. Stanley, of Wichita, Kan., and R. C. Russell, of Great Bend, Kan., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

From a judgment on a policy of war risk insurance in favor of Wayne Pritchard, guardian of Paul Pritchard, the United States has appealed.

By its general verdict the jury necessarily found that Paul Pritchard, the insured, became permanently and totally disabled on or before January 31, 1919, when the policy would otherwise have lapsed for nonpayment of premiums. The sufficiency of the evidence to support that finding is the sole issue presented on this appeal.

The evidence viewed in a light most favorable to the plaintiff established these facts:

Prior to the Great War insured lived with his parents in Great Bend, Kansas. His father was engaged in the laundry business and insured drove the delivery wagon, gathering and distributing laundry. Later his father engaged in the automobile and garage business. Insured worked in the shop, sold automobiles, and did general work. The father died in 1915 and thereafter insured and his brother continued the business; insured did most of the work in the shop and in addition demonstrated and sold some automobiles.

Insured enlisted in the National Guard May 24, 1915. He was mustered into the Regular Army on August 5, 1917, and was honorably discharged on December 5, 1918. On February 1, 1918, he applied for and was granted a policy of war risk insurance for $10,000.00.

Prior to his entry into the Army insured was good-natured and of a jovial and friendly disposition. For a time after he entered the Regular Army his disposition remained unchanged. He enjoyed going to dances and at times played in orchestras for dances near the camp where he was stationed. Later those who served with him noticed a change. He became sober and sullen and would have fits of anger which would last about five minutes and then pass. On one occasion without provocation he seized a chair and endeavored to strike a comrade with it. On another occasion he became angry with a comrade from Great Bend who was a close friend. He seemed reluctant to go to see his brother, who was also in the military service, and to do the things he had formerly enjoyed. His mother visited him while he was in the service and observed that he was not natural; that he was quiet and sober. Upon his return from the Army his family noticed a marked change. He was sober and sullen. At times he would not speak to members of his family; would not respond to their questions and would pay no attention to their requests. He manifested nervousness, he would get up and then sit down, and walk around with his hands over his eyes. At other times he would stand in one position as if in a trance. He was ill-humored with his mother.

Shortly after his return he showed one of his former comrades some drawings and stated that he was working on an invention of a gas engine with two pistons and one cylinder, one piston being inside the other, in an endeavor to secure higher compression. Sometime later he told this comrade he had been offered $50,000.00 for his invention. He became careless in his personal appearance; at times he would not shave, bathe, change his clothes, or take care of himself personally. Late in 1920 or early in 1921 he tried to take his own life with a razor.

Shortly after his return insured met a business man of Great Bend with whom he had been well acquainted since 1908 and failed to recognize him.

Since March, 1921, he has received almost continuous hospitalization. He was treated for a short time in a hospital at Halstead, Kansas; a short time in a hospital at Wichita, Kansas; and about a year in a hospital at Macon, Missouri. The physicians at the Halstead hospital advised insured's mother they could not do anything for him. After leaving the hospital at Macon he returned home for a short time. He was quarrelsome with his family, would grab his mother and twist her arms and pinch her, would break up furniture and light globes, tear his clothes, refuse to eat his meals, or go to bed, and generally became unmanageable. After a few weeks of this conduct his mother requested the government to take care of him. He was first committed to the state hospital at Larned, Kansas; later he was transferred to a Veterans Hospital at Knoxville, Iowa; from there he was transferred to the Veterans Hospital at Fort Lyons, Colorado, where he has since been confined. On March 5, 1923, and June 11, 1923, after medical examinations by the Veterans Bureau, he was diagnosed as a dementia praecox paranoid type. Subsequent examinations have confirmed this diagnosis and his condition has grown gradually worse.

During the first ten or twelve months after his discharge insured and his brother played in an orchestra at Great Bend. The orchestra consisted of three pieces and insured played the piano. The orchestra gave a regular dance on Saturday nights and occasionally played at other functions. They normally earned at each dance from seventy-five cents to a dollar and a half apiece. On one Halloween dance they earned eleven dollars apiece.

In the latter part of 1919 or early in 1920 insured worked for a paving company as a mechanic repairing trucks. The employment was terminated at the end of a period of two or three months and insured was sent home in charge of a fellow employee.

To overcome the foregoing facts with reference to insured's mental condition, the government relies upon the fact that the certificate of the examining surgeon made on December 4, 1918, recited that he was physically and mentally sound, upon the work record above detailed, and upon statements made by Lizzie Pritchard, insured's mother, in applications for insurance benefits. In a claim filed February 24, 1923, she stated: "Date disability began—Mar. 1921. total disability. Partial while in service. Cause of disability—overwork driving trucks"; in an affidavit made May 24, 1926, she stated: "On or about Mar. 27, 1921 my son Paul E. Pritchard was suddenly stricken with a mental and nervous disability"; in a claim filed April 21, 1931, she stated: "Date disability began—March 1920. From what date is permanent and total disability claimed?—March, 1920"; and in a claim filed March 20, 1931, she stated: "Date disability began—Complete nervous breakdown occurred in Mar. 1920."

It is a well known fact that dementia praecox is incurable and results in total disability. It is also a well known fact that many persons of unsound mind are able to play musical instruments. Insured's earnings as a musician were inconsequential and it is quite apparent that he was unable to hold a job as an automobile mechanic. The statements made by insured's mother merely went to the weight and credibility of her evidence, and while proper for consideration of the jury were not conclusive. United States v. Worsley, 10 Cir., 72 F.2d 776, 779.

The case is distinguishable from United States v. Cochran, 10 Cir., 63 F.2d 61, 62, in that there was more than a predisposition to the mental disease at the time of discharge. It was a reasonable inference that the condition manifest during his service and at the time of his discharge and which has continuously grown worse was the beginning of the mental disease later diagnosed as dementia praecox. See Rackoff v. United States, 2 Cir., 74 F.2d 720; Gray v. United States, 8 Cir., 76 F.2d 233.

In our opinion the proof fully warranted the jury in finding that the disease had its inception during the period of service and that on the date of discharge insured was mentally unsound and unable to follow continuously any substantially gainful occupation founded on conditions which indicated with reasonable certainty that such impairment would continue throughout his life.

We conclude that the evidence presented an issue for the jury.

The judgment is accordingly affirmed.