State v. Charles.

---

THE STATE v. JAMES CHARLES et al., Appellants.

Division Two, November 19, 1907.

1. **RECOGNIZANCE: Terms: Extension.** The obligation of sureties on bail bonds will not be extended beyond what is clearly contemplated by the terms employed in the conditions of the bond.

2. ———**: Plea of Guilty: Postponing Sentence: Discharge of Sureties.** Where the condition of the recognizance requires defendant "to personally appear to answer and defend the information and not depart the court without leave," his sureties are discharged after he appears and enters a plea of guilty, or if he enters a plea of not guilty after a verdict of guilty is returned by the jury. He has thereby satisfied the conditions of the bond. And if, after his plea of guilty, his sentence is postponed to a day certain and he agrees to return on that day, but does not, his sureties are not liable on his bond. The power

State v. Charles.

of the court to order him into the custody of the sheriff began immediately upon his plea of guilty, and it was its duty either to do that or take a new bond.

3. ———: **Terms: To Answer: Meaning.** The terms of the bond "to answer and defend the, information" mean no more than they say. They are met by a plea of guilty or a verdict of the jury. They do not mean to render obedience to the judgment and sentence of the court.

4. ———: ———: **Depart Without Leave.** The words in the bond "and not depart without leave" cannot be used to extend the time embraced in the main proposition "to personally appear to answer and defend the information."

5. ———: **New Condition.** It cannot be said that defendant's sureties by entering into a bond that he would personally appear at the next term "to answer and defend the information, and not depart without leave," agreed to be responsible for his appearance on a day certain, after his plea of guilty or a verdict of guilty, to receive judgment and sentence, for there is an additional risk after such a plea or verdict.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED.

*Scott J. Miller* for appellants.

Under the conditions of the bond, when the defendant, Roy Charles, pleaded guilty, the obligation of the bond was fully satisfied, and the clause "not to depart the court without leave," is mere surplusage. State v. Whitecotton, 63 Mo. App. 12; State v. Poston, 63 Mo. 521; State v. Livingston, 58 Mo. App. 449; State v. Creech, 69 Mo. App. 380; State v. Murmann, 124 Mo. 502.

FOX, P. J.—This cause is brought to this court by appeal on the part of the defendant, James Charles, from a judgment in the circuit court of Carroll county upon an alleged forfeiture of recognizance. We deem it unnecessary to set forth in detail the entire record applicable to this cause and shall be content with a

substantial statement of the history of the cause from which this proceeding emanates, together with a sufficient reference to a recital of the record. Roy Charles of Carroll county, Missouri, was charged upon information filed by the prosecuting attorney with the offense of embezzlement. At the January term, 1905, of the circuit court of Carroll county, the defendant as principal and James Charles and Frank Yehle, two citizens of Carroll county, entered into a recognizance for the appearance of Roy Charles to answer the charge contained in the information. The recognizance as disclosed by the record was in the following form.

"Comes the defendant, Roy Charles, as principal, and Frank Yehle and James A. Charles, as securities, and jointly and severally acknowledge themselves to owe the State of Missouri the sum of one thousand dollars, conditioned that the said Roy Charles shall personally be and appear on the first day of the next term, of this court, to be held at Carrollton, on the third Monday in April next, 1905, to answer and defend the information filed, charging him with embezzlement, and not depart the court without leave, then this recognizance to be void."

The defendant appeared in the Carroll Circuit Court in obedience to the conditions of his bond, on the first day of the April term, 1905. He appeared from day to day, commencing on the first day of the term, until Thursday, the twentieth day of April, which was the 4th day of the term, when on that day the record discloses that he waived formal arraignment and entered a plea of guilty to the offense as charged in the information. The record entries touching what was done in respect to this defendant were as follows:

"And afterwards and at the said April term, 1905, of the said Carroll County Circuit Court, on the twen-

tieth day of April, 1905, the same being the 4th day of the April term, 1905, of said court, the said information and cause coming on to be heard, the State appearing by the prosecuting attorney of said county of Carroll, and said defendant, Roy Charles, appearing in his own proper person and in open court waives formal arraignment under the information charging him with embezzlement as a public officer and for plea thereto, says that he is guilty as charged in said information.

"And afterwards, to-wit, at said April term of said court and on the twenty-seventh day of April, 1905, the same being the 10th day of said term of said court, comes the State of Missouri by W. J. Allen, prosecuting attorney, and moves the court that sentence and judgment be now entered against defendant, Roy Charles, in accordance with his plea of guilty.

"Whereupon, the said defendant, Roy Charles, is duly called to appear and receive sentence in accordance with his plea of guilty and the said defendant, although duly called, makes default and comes not as by his recognizance he was bound to do, but departed the court without leave and did not remain and abide final judgment and sentence of the court as by his recognizance he was bound to do."

Following these entries of record it is sufficient to state that the usual course of procedure was adopted; *scire facias* was issued and returned duly served; defendant filed a demurrer to the *scire facias,* which was by the court overruled. There was also an application for a change of venue filed, which was by the court denied. Defendant James Charles then filed his answer, which in its last analysis substantially presents the claim and contention that when the defendant, Roy Charles, appeared in the circuit court the cause was called for trial upon the information charging the defendant with embezzlement, that he

then and there waived formal arraignment and entered his plea of guilty; that this was a compliance with the conditions of the bond and that the defendant Charles, as one of his securities, was no longer liable upon his bond for his failure to be in court, and that his appearance and entering a plea of guilty was a complete answer to the information as conditioned in the bond. A controversy arose as to what was done in respect to the defendant being permitted to go until a future date, when he agreed to appear to receive sentence. There was oral evidence concerning this controverted question; however, that is outside of the disclosures of the record proper respecting what was done, concerning the substantial question in dispute, and therefore we do not deem it essential to reproduce the oral evidence introduced, and it did not constitute any part of the record proper in this proceeding and therefore will not be considered in the final disposition of this case. The trial court heard the proceedings upon the issues presented by the *scire facias* and answer and found the issues for the State and rendered judgment for the penalty designated in the recognizance. Timely motions for new trial and in arrest of judgment were filed by the appellant, James Charles, which were by the court overruled, and the defendant James Charles in due time and proper form prosecutes his appeal to this court and the record is now before us for review.

## OPINION.

It is manifest that the main proposition disclosed by the record before us is whether or not the appearance of the defendant as shown by the record in the circuit court of Carroll county, and his waiver of formal arraignment and his plea of guilty to the offense charged in the information, constitutes such answer to the information as contemplated by the conditions of

the bond, and whether or not it is such a compliance with the requirements of the bond as would relieve his sureties from the results of a forfeiture of such recognizance taken at a subsequent time for failure to appear in court to receive sentence and judgment upon his plea of guilty.

Our statute in providing for the taking of a recognizance for the appearance for trial in the circuit court in cases of felony does not expressly provide the form of such recognizance, nor does it undertake to designate or specify particularly what the conditions of such recognizance shall be. It simply makes provision that, in cases where bail is allowed, a recognizance may be taken, and provides what officers shall take it and how it shall be certified. This doubtless brought about the announcement of the rule in State v. Poston, 63 Mo. l. c. 523, where the learned judge deciding that case said: "There is no substantial difference between a recognizance at common law and the one provided for by our statute." While the forms of bail bonds taken in this State and even in other jurisdictions are quite similar and it may be said are substantially the same, yet an examination of this question has convinced us that very often the terms employed in the conditions of a bond are very dissimilar. There are recognizances entered into conditioned not only for the appearance to answer a criminal charge or quasi-criminal charge, but there is also embraced the additional stipulation that "the defendant will submit to and obey all orders and judgments of the court."

At the very threshold of the consideration of the legal proposition confronting us in this cause we find that the appellate courts of this State, both the Courts of Appeals and the Supreme Court, have indicated in no uncertain terms their unwillingness to extend the obligation of sureties beyond what is clearly contemplated by the terms employed in the conditions of

the bond. In the case of State v. Mackey, 55 Mo. 51, the recognizance recited that "the defendant would appear to answer an indictment for certain offenses which was pending against him, on the first day of the next term of the circuit court to be begun and held in the county where such indictment was pending, and would not depart said court without leave thereof." This recognizance was entered into on the 15th day of April, 1868. The next term of the court at which the defendant was required by the conditions of his bond to appear, was to be held by law in October, 1868. The record failed to disclose any action taken by the court at the October term, 1868, at which the defendant was required to appear, but at the April term, 1870, the record discloses that the sureties failing to produce the body of said defendant in court, the bond was forfeited to the State and forfeiture thereof was taken at said term and judgment followed accordingly upon said forfeiture. This court, speaking through Judge VORIES, thus expressed the views of the court upon the conditions embraced in that recognizance. He said: "The terms of the bond or recognizance are, that Mackey should appear at the October term of the court for the year 1868, and not at the April term of the court in the year 1870. If the defendant appeared at the October term in the year 1868, as required by the bond, and remained in court the whole term, ready to obey the order of the court until the term was adjourned, and no measures were taken by the court to commit the defendant or otherwise secure his appearance at any subsequent term of the court, upon the adjournment of that term of the court, the bond or recognizance would become discharged and of no further effect and could not be forfeited by the failure of the defendant to appear at some subsequent term of the court." [Citing Smith v. People, 1 Park. Crim. 317; Keefhaver v. Commonwealth, 2

P. & W. (Pa.) 240; Kiser v. State, 13 Ind. 80.] The same doctrine is recognized in Swank v. State of Ohio, 3 Ohio St. 429. In that case it will be observed that there was an express provision that the defendant should not depart the court without leave, and it is manifest that the court made no order in that proceeding granting the defendant leave; hence the conclusion reached in that proceeding is based absolutely upon the failure of the court to exercise its power and take the proper action to secure the appearance of the defendant at any subsequent term of the court. In other words, the rule as announced in that case simply means that if the defendant appeared at the proper term to answer the charge preferred against him, ready to obey any order that might be made by the court, and the court failed to exercise its power in not making an order, either to commit the defendant or otherwise secure his appearance at some subsequent time, the conditions of the bond or recognizance were fully complied with and the sureties executing the same would be relieved of any liability upon it. The same rule was adhered to in Allen v. Brewery & Ice Co., 196 Mo. 435. In that case Allen was recognized to appear before the justice on the 22d of January, 1900, to answer a criminal charge. He appeared on that day, and by agreement the cause was continued to October 4, 1900. No steps were taken at the time he was required to appear, on the 22d day of January, to have him enter into a new recognizance or commit him upon failure to do so. Notwithstanding the cause was continued by agreement to the subsequent date, as before mentioned, it was expressly ruled that no forfeiture could be legally taken, at such subsequent date, to which the cause had been continued, and it was there announced by this court, speaking through Judge BURGESS, that: "As Allen appeared before the justice on the 22d day of Jan-

uary, as required by the recognizance, to answer the
charge preferred against him in the information, and
remained until the case had been postponed, by agree-
ment, to another day, and no further steps were taken
to secure his appearance before the justice, the recog-
nizance was discharged and could not be forfeited at
the time to which the case was finally postponed, to-
wit, October 4, 1900,'' citing, in support of the an-
nouncement, State v. Mackey, 55 Mo. 51.

The Kansas City Court of Appeals, in State v.
Moore, 57 Mo. App. 662, unequivocally approved the
holding of Judge VORIES in State v. Mackey. In that
case the learned judge indicates that in the proceed-
ing under consideration there was an attempt made
to extend the obligation of the sureties beyond the
term at which they bound themselves that the defend-
ant should appear. Upon that proposition the court
said: ''The bond was conditioned that defendant
should appear at the 'next term' of the court and 'not
depart without leave.' Our conclusion is that the sure-
ty defendants complied with the conditions of this
bond when they saw that Moore, the principal, ap-
peared and remained through the next term of court
following the execution of the bond. The bond cov-
ered that term, but did not reach to a succeeding term.
If at any time during that term, before or after the
continuance was entered, defendant had been called
to renew his bond, as he should have been, and had
defaulted, it would have been a forfeiture of this bond.
This was not done, but instead, there is an attempt
made to extend the obligation of these sureties beyond
the term at which they bound themselves that defend-
ant should appear. This has been permitted in some
States, under the clause, probably, binding the defend-
ant not to depart without leave and to abide the judg-
ment and orders of the court. [Ramey v. Common-
wealth, 83 Ky. 534; State v. Benzion, 79 Iowa 467.]

But in this State the ruling is against such view. In State v. Mackey, 55 Mo. 51, the question presented here was decided in harmony with what we have said, the only difference in the two cases being that in the Mackey case there were no orders of continuance. This is not a substantial difference, since the effect of a failure to enter an order of continuance is not to abate the cause, but rather to amount to a continuance generally. [Horn v. Excelsior Springs Co., 52 Mo. App. 548.]"

Hawkins, in his treatise of the Pleas of the Crown, has briefly, though so clearly and concisely, stated the rule applicable to sureties that some of the authorities very appropriately designate it as "Sergeant Hawkin's End of the Law." In stating the law as to the power and the duty of the sureties the eminent author said that "it must be confessed that if a man's bail, who are his jailors of his own choosing, do as effectually secure his appearance and put him as much under the power of the court as if he had been in the custody of the proper officer, they seem to have answered the end of the law, and to have done all that can be reasonably required of them."

In State v. Murmann, 124 Mo. 502, this court, speaking through Judge GANTT, in discussing the question as to the liability of sureties, expressly ruled in no doubtful or uncertain terms that it was the duty of the court, when a verdict of guilty was rendered, to order the prisoner into the custody of the sheriff, and it was recited in that case that the case was called; the defendant appeared with his counsel; a jury was empaneled; the evidence heard and the jury returned into court with a verdict of guilty; the defendant was present to abide the orders of the court. Now while the facts in that case differed from those in the case at bar, in this, that it is recited that the sheriff did in fact take charge of the principal by an unequivocal

207 Sup.—4

assertion of authority, and it was held, under the facts in that case, that the sureties in the bond were relieved from liability, however, it is manifest that the court did not intend to say that unless the sheriff had taken charge of the defendant in that case, against whom a verdict of guilty had been returned, the sureties would not be relieved of liability upon the bond. The court in that case was discussing it upon the particular facts as disclosed by the record, and did not intend to hold that, because the facts in that case dispensed with the necessity of the court exercising its power in ordering the defendant into the custody of the sheriff, the failure of the court to exercise such power and order the defendant into the custody of the sheriff would not result in relieving the sureties from liability upon the bond. Doubtless with a view and for the express purpose of manifesting to the trial courts and the profession the rule as applicable to the power and duty of the trial courts respecting this subject, this court in the conclusion of the opinion in that case very clearly and emphatically gave expression to its views upon this proposition and said: "We are not to be understood as countenancing a loose practice in such cases. The trial courts upon the coming in of a verdict of guilty should regularly order the prisoner into the custody of the sheriff, unless his recognizance expressly secures his freedom until final sentence."

The conditions of the bond in the case at bar required the principal to appear in court, "to answer and defend the information." Now, while it must be conceded that the mere appearance in court would not fully meet the conditions of the bond, yet if when the case is called and he is arraigned upon the information and enters his plea of guilty, or if he enters a plea of not guilty, and upon the trial the jury returns a verdict of guilty, in our opinion he has fully satisfied the conditions of his bond "to answer and de-

fend the information." Under the conditions of the
bond he cannot absent himself during the progress of
the trial or before he has entered his plea of guilty,
for it is by the entry of his plea of guilty to the offense
charged in the information, or return of a verdict of
guilty by a jury upon trial, that places him directly
within the power of the court. When, as in the case
at bar, the principal, in obedience to the requirements
of his bond, appears before the bar of justice and
says to the court, upon the call of his case for hear-
ing: "Here I am; I waive formal arraignment and
enter a plea of guilty; do with me as the law directs,"
this was, as was said by Hawkins in his Pleas of the
Crown, as completely and effectually putting himself
under the power of the court as if he had been in
the custody of the proper officer, and the power and
duty of the court to exercise such power in dealing
with a principal who had submitted himself to the con-
trol of the court began at that time, and if this court
in State v. Murmann, supra, announced the correct
rule, that it was the duty of the court upon the return
of the verdict of guilty to order the defendant into
the custody of the sheriff, it must logically follow that
the power and duty of the court to exercise that power
began upon the return of the verdict of guilty, or, in
the case at bar, upon the entering of a plea of guilty,
and the powers and duties of the sureties in respect
to such principal ceased.

In our opinion the appearance of the principal
before the court, entering his plea of guilty to the
offense charged in the information, thereby putting
himself under the power and control of the court, sub-
stantially met and satisfied the conditions of the bond
which required him to "appear and answer the infor-
mation." At least we are unwilling to take the ad-
vanced step and announce the rule that the risk of
the sureties should be increased by holding that the

terms "answer and defend an information" shall be interpreted to mean, not only answering the information, but as well to render obedience to the judgment and sentence of the court which may be rendered in the cause. As to the recital in the recognizance, "not depart the court without leave," it is sufficient to say that in our opinion it has no application to the main proposition involved. [State v. Poston, 63 Mo. 521; State v. Whitecotton, 63 Mo. App. 12.]

The practice and procedure in this State is almost universal that upon a defendant entering a plea of guilty or upon the return of a verdict finding a defendant guilty, the court immediately orders the prisoner into the custody of the sheriff. The main object of a recognizance in the form of the one involved in the case at bar is to have the principal present to stand his trial, and when the trial is ended and his guilt ascertained, the defendant should be placed under the immediate power and control of the court. We are unwilling to say that the conditions of a bond "to answer and defend the information," should be construed to mean that the principal shall not only answer and defend the information by entering a plea of guilty or standing a trial and having a verdict of guilty returned against him, but that he shall abide the judgment and sentence of the court, and if the court fails to exercise its power by ordering him, upon the return of the verdict of guilty, into the custody of the sheriff, the obligation rests upon the sureties, after awaiting the pleasure of the court, to produce the body of the defendant to receive sentence and judgment. Such in our opinion has not been the common understanding of the obligation of sureties, and while bondsmen might be perfectly willing to guarantee the appearance of a person charged with a criminal offense to stand his trial, yet we apprehend that it is far beyond their understanding of the nature of

the contract (similar in form to the one involved in this proceeding), that they will await the pleasure of the court, after the return of a verdict of guilty, and take the additional risk, with this verdict staring their principal in the face, to have him before the court at some subsequent time to receive his sentence and judgment.

The conclusion we have reached as to the reasonable construction of the terms employed in the conditions of the bond is not the announcement of a harsh rule upon the subject under consideration, but is a fair and reasonable construction of the terms employed in the contract of the sureties and in no way impedes or interferes with the proper administration of the criminal law of this State. If the trial courts will heed what was said in the Murmann case respecting the duty of the courts upon the return of a verdict of guilty, to order the prisoner into the custody of the sheriff, it will be the end of all controversies of this character.

We have given expression to our views upon the main propositions disclosed by the record, and the conclusions reached renders it unnecessary to discuss the other questions presented. The judgment of the trial court in this cause should be reversed, and it is so ordered. All concur.