**LA GROTTA v. UNITED STATES. \***
**QUIGLEY v. SAME.**
**PRADELL v. SAME.**
Nos. 10065–10067.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1935.

*Rehearing denied July 11, 1935.

674

Eugene D. O'Sullivan and M. O. Cunningham, both of Omaha, Neb. (Charles J. Southard, of Omaha, Neb., on the brief), for appellants.

Frederick G. Hawxby, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., and Barlow Nye, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before STONE, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

The three cases above entitled were by consent argued and submitted together. Each of them is a plenary suit by the United States to recover on a forfeited bail bond in a criminal case. These bail bonds, toward which in each case the chief attack is directed, are, save for names, dates, and amounts, wholly similar. Extrinsic and particular facts do not so far differ as to justify separate opinions. Discussion of differentiating facts will, however, be had.

In the La Grotta case, No. 10065, appellant as surety for one Roy Walton was on trial to the court, adjudged to pay appellee the sum of $3,000 on a forfeited bail bond, which reads thus, signatures omitted: "Know All Men By These Presents, That we, Roy Walton as principal, and A. La Grotta, as surety or sureties, are held and firmly bound unto the United States of America in the penal sum of three thousand Dollars ($3000.00), lawful money of the United States, to the payment of which, well and truly to be made, we bind ourselves and representatives forever. The condition of the foregoing obligation is such that if the said Roy Walton shall personally appear before the District Court of the United States for the District of Nebraska, Nebraska Division, held in Omaha in said District, from day to day of the present term thereof, and from day to day of any subsequent term and then and there to answer to all matters and things as may be objected against him, and then and there abide the orders and judgment of said Court, and not depart without leave; and if sentenced to be imprisoned, shall surrender himself or herself to the United States Marshal at the time when his or her sentence of imprisonment is to begin, then this obligation to be void, otherwise to remain in full force and virtue."

This bond was executed and filed, March 29, 1928, and during the September term, 1927, of the Omaha Division. The next term in this division began on the first Monday in April, 1928. Thereafter (but date indefinite), Roy Walton

was indicted for a violation of the Harrison Anti-Narcotic Act (26 USCA §§ 211, 691–707). On December 5, 1928, and in the September term, 1928, appellant was notified to produce Walton in court on December 11, 1928. He failed to do so and thereafter on December 13, 1928, the bond of appellant was ordered to be forfeited. A plenary suit on the bond against both Walton and appellant was filed on January 26, 1929. No service was had on Walton, but appellant appeared and answered; his demurrer to the petition of the government having been overruled.

■ The trial was to the court a jury being waived. The evidence adduced was largely on stipulated, or agreed facts, supplemented only, by entirely colorless testimony given by appellant, testifying for himself. At the conclusion of the trial, both sides moved for judgment, thus conceding that there are no disputed facts in the case. Among other reasons, why La Grotta was entitled to judgment, he urged that "the bail bond signed by him, as charged in this case, is not in manner and form as provided by law and is a nullity." Other grounds, as that there had been no willful default, and so all or a part of the penalty of the bond should be remitted under the provisions of section 601, title 18 USCA, and that Walton was confined for a time in a federal penitentiary, on conviction in Oregon, of a similar offense, scarcely need to be mentioned. The court rendered judgment against appellant for the full sum of the bond and interest and this appeal followed.

■ In limine, appellee moves to dismiss the appeal and to strike the bill of exceptions from the record. As authority for its motion to dismiss, appellee urges the case of Law v. United States, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401. On its bare face the above case seems to be authority for the position of appellee. But we think it clear that a fact present in the Law Case, supra, is lacking in the court's statement of the facts therein. That fact is that there was a conflict in the evidence which the trial court there had the right to resolve; here no such conflict existed, only questions of law were left in the case. On no other theory are we able to reconcile the Law Case, supra, with what we consider the settled rule. An examination of the opinion of the trial court confirms the above view

of the facts in the Law Case, supra. So, we think it plain that the Law Case, is not an authority for appellee's motion to dismiss, or to be exact, to affirm.

■ If the case of United States v. Payne (C. C. A.) 72 F.(2d) 593, is to be followed, the bill of exceptions must be stricken from the record. For the latter case seems to hold that if the time for filing a bill of exceptions after the end of the current, or trial term be extended, such extension must appear in the bill of exceptions itself, and not in what is sometimes loosely called the record proper, or primary record. In the case at bar, the extension, and a sufficient one, does appear in the record proper, but does not appear in the bill itself. Undoubtedly, in a highly technical way the objection is well taken; but few courts have put an appellant out of court for failure to print the order precisely where it belongs. Here, the order extending the term sixty days, for the purpose of filing a bill of exceptions, appears in the record proper; but no mention is made of this order in the bill itself. It seems an unfair hardship to require an appellant after having printed an order of extension in the record proper, to again print it in the bill of exceptions; or to state the situation more precisely, to see to it, that the order of extension is put, not in the record proper, but at the tail of the bill of exceptions, where concededly of right it belongs, upon penalty of having such bill stricken from the record. We are inclined to the view that in such situation, the lately amended statute of jeofails should apply and the motion should be overruled. Section 391, title 28 USCA.

■ Coming to the merits of the case, it is obvious that the fact that Walton was convicted and sent to the federal penitentiary from the state of Oregon in July, 1929, is no legal reason for his failure to answer on his bail bond on December 13, 1928, when the forfeiture was taken. Nothing is to be found in the record, which at all militates against the inevitable conclusion that Walton willfully absented himself on December 13, 1928. His further acts and vicissitudes are thereafter wholly irrelevant. Weber v. United States (C. C. A.) 32 F.(2d) 110.

The only serious question in the case arises from the action of the court in refusing to sustain the motion of appellant

for judgment, on the following ground, which we think brought up the validity of the bond in controversy, to wit: "Because the bail bond signed by him (appellant) as charged in this case, is not in manner and form as provided by law and is a nullity."

Both sides seem to concede that the power and authority of a United States Commissioner to take bail in a criminal case in the state of Nebraska is relegable to statutes of Nebraska. See Palermo v. United States (C. C. A.) 61 F.(2d) 138. The statute relied on by appellant is section 29-506, Compiled Statutes of Nebraska, 1929, which, so far as is pertinent, reads thus: "* * * If the offense be bailable, he may be ordered released upon entering into a recognizance in such sum as may be fixed by the magistrate with one or more good and sufficient sureties to be approved by him, conditioned that the accused appear forthwith before the district court, if then in session, and if not in session, then on the first day of the next jury term thereof and not depart the court without leave; * * * no recognizance requiring the accused to appear at the next term of the court shall be rendered invalid by the fact that the court is in session."

■ While the bond under discussion here is carelessly and inartificially drawn, it does not conflict with the above statute. Cf. United States v. Mace (C. C. A.) 281 F. 635. But it is contended that it requires the principal in the bond to appear in a nonexistent division of the federal court, for that it names as the division, the Nebraska Division, when there is no such division, and when Omaha Division was meant and intended. But it does require the appearance of the principal "before the District Court of the United States for the district of Nebraska * * * held at Omaha in said district." We think this was sufficient.

Nor does the bond name the specific charge pending against the principal. It merely requires the principal, having appeared, "then and there to answer to all matters, and things as may be objected against him." The statute quoted does not forbid this, nor does it specifically require that the bond shall describe the nature, or set out the name of the offense pending, or to be preferred against the principal. Appellant was not obliged to become a surety on the bond; he is presumed to have read it, and by signing it he consented to its terms. United States v. St. Clair (C. C. A.) 42 F.(2d) 26.

■ The statute above set out does not, it is true, in terms provide that the principal shall appear from day to day and term to term, as in effect does the bond; but it does say that the principal shall "not depart the court without leave." So says the bond also. Besides, there is another statute of Nebraska, section 29-901, Comp. St. 1929, which so far as pertinent reads: "All recognizances in criminal cases shall be continuous from term to term until final judgment of the court in said cases. When two or more indictments or informations are returned against the same person at the same term of court, the recognizance given may be made to include all offenses charged therein." All such state statutes are, however, in these matters of bail and recognizance in criminal cases directory and not mandatory. Bassett v. United States (C. C. A.) 18 F.(2d) 856; United States v. Smith (D. C.) 3 F. Supp. 498.

In case No. 10066, Quigley v. United States, submitted with No. 10065, there are in controversy two bail bonds made by Earl Noyes as principal and appellant as surety. These bonds barring the names of the principal and the amounts of the penalties are identical, including mistakes, carelessness and misprisions, with the bond above discussed in the La Grotta case.

On the trial the latter case was disposed of upon a motion of the appellee, United States, for a judgment on the answer, or pleadings, which the trial court sustained and found for appellee for the full amounts of the bonds with interest. The answer thus adjudged insufficient in stating any defense, averred in fair effect that the principal appeared before the district court as bound, on the 3d day of January, 1929, and therein entered his plea of guilty to both charges against him and was sentenced to a federal penitentiary for two years on each charge, sentences to run concurrently. That thereupon, in the absence of appellant and without his consent, a stay of execution, or a suspension of sentence, was ordered by the court, till January 14, 1929, and that a similar order of suspension was again, under similar circumstances, made

on January 14, 1929, until February 1, 1929, on which latter day, the principal failing to appear, a forfeiture was taken.

In addition to the contentions, or a majority of them, made in the La Grotta case, it is urged that the appellant surety was exonerated by the act of the court in suspending the sentence by the two orders made, from January 3, 1929, to February 1, 1929. Since the bail bond, in consonance with section 29-901, supra, provided that the principal therein should "not depart the court without leave," it was a breach of the bond to do so. Other obvious orders for the benefit of the principal, if that is relevant, were still in the power of the court, before the court should finally grant leave for the principal in the bond to depart without day.

In the case of Pradell v. United States, No. 10067, submitted with the two cases above discussed, the bond was identical, with those involved in the above companion cases. The Pradell case was tried to the court, a jury being waived, on facts largely stipulated. Some evidence came into the case, of a hearsay sort—not objected to, however, that Livingstone the principal in the bond in the Pradell case, had not intentionally absented himself at the time the forfeiture was taken, but was absent on a vacation, that is to say, that he was not willfully absent. But this defense was here, under the record and the situation, a matter for the trial court; since the trial was to the court, and since both parties moved for judgment at the close of the trial. And since the record tends to show that on May 31, 1928, on November 15, 1928, on December 31, 1928, and on June 28, 1929, appellant was notified to produce the principal in the bond on days thereafter in the several notices set forth, but four times failed to do so, the trial court is not to be convicted of error for that he was not convinced that the principal was on vacation for almost 14 months. Another reason for relegating the determination of the normal length of a vacation in Nebraska to the trial court is, that he is a fitter and better judge of the length of local vacations than is this court.

After the four postponements, and on July 29, 1929, a forfeiture was taken on the bond. Subsequently, the principal in the bond, one Livingstone, voluntarily appeared and gave a new bond, not yet here involved, and was permitted to go, but died before he was tried. The trial court deeming the provisions of section 601, title 18, U. S. C. (18 USCA § 601), applicable, rendered judgment against appellant only for the sum of $500, thus remitting $2,500 of the penalty of the bond and no appeal was taken by the United States.

Except for the one point above set out, what is said in the La Grotta case applies also to the Pradell case. The cases are close and troublesome, particularly upon the one question touching whether, at least in general terms, the crime charged should not have been set out in the bond. So-called common-law bonds, or those bonds which require one suspected of a crime to appear and answer on a day fixed, *any criminal charge which may be made against him,* are in almost universal use in all jurisdictions. There is much to be said in favor of the common-law bond, as such bonds as this at bar are sometimes called, as a matter of convenience to both accuser and accused. It is not to be expected that all officers, who are by law vested with authority to take bonds, will in every case possess either sufficient facts, or sufficient legal learning to nicely pick and choose the precise crime for which an accused person, held to the grand jury may be, by that body ultimately charged. If the wrong offense be set out, it is plain that such defect would be relied on and urged by the surety in case of forfeiture as a ground of invalidity. Absent a statute forbidding the inclusion of such conditions (and there is no such statute) no reason is known, why under well-settled interpretations of the nature of the contract, the bond here up for judgment should not be a valid obligation. United States v. Linn, 15 Pet. (40 U. S.) 290, 10 L. Ed. 742; United States v. Payne (D. C.) 1 F. Supp. 895; United States v. Bradley, 10 Pet. (35 U. S.) 343, 9 L. Ed. 448; Kirk v. United States (C. C. A.) 137 F. 753. Here the obligation assumed is complete, certain, and definite. It may be burdensome and onerous in its terms, "But where it is voluntarily entered into and the principal enjoys the benefits which it is intended to secure and a breach occurs, it is then too late to raise the question of its validity. The

parties are estopped from availing themselves of such a defence. In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of the rights of the government and of the liability of the obligors." United States v. Hodson, 10 Wall. 395, loc. cit. 409, 19 L. Ed. 937.

 Regarded as a contract, the contentions of appellants are wholly untenable. True it is that the appellants bound themselves to have their principals at the beck and call of the court, in effect from day to day and term to term. But as said in the Hodson Case, supra, it is now too late to complain of this. The terms and days of appearance are certain, or capable of certitude by other language in it. In the case of Joelson v. United States (C. C. A.) 287 F. 106, loc. cit. 108, it was said: "A bail bond is a contract between the government, on the one side, and the principal and surety, on the other. United States v. Zarafonitis et al., 150 F. 97, 80 C. C. A. 51 [10 Ann. Cas. 290]; Kirk v. United States (C. C.) 131 F. 331. Like other contracts, it must be construed according to its express terms, and when it is defective as to the place and time at which defendant is to appear, these may not be supplied by intendment. State v. Casey, 27 Tex. 111; Horton v. State, 30 Tex. 191. If the place and time of appearance by defendant are not expressly stated in a recognizance, and these cannot be fixed by other terms in it, the omission is fatally defective. State v. Allen, 33 Ala. 422; People v. Carpenter, 7 Cal. 402; Sheets v. People, 63 Ill. 78."

 The contention made in the Pradell case, wherein the principal was charged with violating the National Prohibition Act (27 USCA § 1 et seq.) that the surety was released by the adoption of the Twenty-First Amendment, is hardly worthy of mention. The judgment of forfeiture was rendered in July, 1929, the Twenty-First Amendment was adopted December 5, 1933.

This contention has no merit. The case of Fidelity & Deposit Co. v. United States (C. C. A.) 74 F.(2d) 296, urged on us as controlling authority on the point, is not at all apposite. There the bond was conditioned for the delivery to the marshal of a motor car seized, flagrante delicto transporting illicit liquor, contrary to the late Prohibition Act. There was not, as in the forfeiture of a bond given in a criminal case, an interlocutory judgment; but before final judgment (the case having been appealed), the law under which the car had been seized 'was in effect repealed, by the repeal of the Eighteenth Amendment. So, in the one case the very statute which permitted the delivery bond to be given was repealed; while in the other no change was made in the law which permitted appellant to contract with the appellee to have the principal in the bond before the court at a given time.

We find no lawful reason sufficiently strong to warrant reversal of either of the three cases. Let each of them be affirmed.