## OYLER v. UNITED STATES.
### No. 1594.

Circuit Court of Appeals, Tenth Circuit.
Sept. 3, 1938.

864

866

James D. Parriott, of Denver, Colo. (Frederick P. Cranston, Kenaz Huffman, and S. A. Sutliff, all of Denver, Colo., on the brief), for appellant.

Thomas E. Walsh, of Washington, D. C. (Thos. J. Morrissey, U. S. Atty., and Joseph N. Lilly, Asst. U. S. Atty., both of Denver, Colo., Julius C. Martin, Director,

of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Keith L. Seegmiller, Atty., of Washington, D. C., on the brief), for the United States.

Before LEWIS, PHILLIPS and BRATTON, Circuit Judges.

LEWIS, Circuit Judge (after stating the facts).

These entries appear in the records of the Navy Department relating to the insured:

"April 5, 1924—Patient worries continually over his family affairs—and his duties aboard ship. Feels his efforts are not appreciated. Breaks down and cries when questioned about his troubles."

"Diagnosis: Psychoneurosis, Neurasthenia. Present condition: Unfit for duty. Probable future duration; Indefinite."

"May 26, 1924—In view of freely talking, flight of ideas, his periods of depression and what seems to be delusions of a persecutory nature, his history of sickness, weakness, headache, he is considered manic depressive."

"Diagnosis changed to 'Psychosis, Manic Depressive.' Origin: Duty."

From the Board of Medical Survey, May 28, 1924: "Diagnosis: Psychosis Manic-Depressive. * * * Patient is suffering from Psychosis, which has periods of persecution and weakness. Has suicidal tendencies. This condition incapacitates him from service and requires institutional care. He is apparently in good health. Present condition: Unfit for service. Probable future duration: Permanent."

"U. S. Naval Hospital, Mare Island, California. July 18, 1924—Readmitted with Psychosis Manic-Depressive."

From insured's Continuous Service Certificate:

"Rate at discharge: Chief Gunner's Mate. Cause of Discharge: Disability in service. Recommended for Re-enlistment: No. Rating best qualified to fill: None."

The following taken from foregoing statement of facts refers to the condition of insured when in veterans' hospitals:

"July 22, 1924, to December 25, 1925, United States Veterans Hospital, Sheridan, Wyoming. Examination, August 28, 1924. Diagnosis—Psychosis, Manic-depressive, Manic type (tentative). Prognosis guarded."

"December 6, 1924, to April 18, 1925, United States Veterans Hospital, Knoxville, Iowa. Examination April 14, 1925. Patient has had psychosis, manic-depressive (improved)."

"March 1, 1929, to August 26, 1929, U. S. Veterans Bureau Hospital, Sheridan, Wyoming. Diagnosis, psychosis, Manic-depressive type pronounced. Incompetent."

"June 4, 1930, to July 2, 1930, Fitzsimons General Hospital, Denver, Colorado. Diagnosis: Incompetent. Psychosis Manic-Depressive. Type, mild."

"January 22, 1929, to February 28, 1929, Woodcroft Hospital, Pueblo, Colorado (contract hospital). Diagnosis, Manic-Depressive (depressed)."

"September 10, 1931, Denver, Colorado. (Place of examination or institution not stated. Four doctors.) Diagnosis, Manic-Depressive. Psychosis, depressed phase."

"July 1, 1935, Denver, Colorado. (Place of examination not stated.) Drs. Stinson and Hugh. Diagnosis—Manic-Depressive. Psychosis, depressed phase. Incompetent."

Doctor Work examined insured November 23, 1936. He had copy of the medical record of the United States Navy relating to the insured's mental condition. He heard the testimony in the case, and it was his opinion at his examination and also his opinion on the medical record and on the evidence at the trial that the insured has manic-depressive insanity; that he had been continuously disabled with it on and since July 23, 1924; that he had a belief he was being persecuted at the hands of different people and organizations. Such patients are depressed even to the point of suicide. Many do commit suicide. It comes on in a general way and lasts throughout life. Psychosis is essentially incurable. The insured has delusions of persecution. He will have better and worse periods. He felt he was being hounded about by the community and prevented from getting jobs, especially by instruments of the Government, the Veterans Bureau and the Navy particularly. His condition will grow worse.

Insured's brother being questioned as to insured's condition from 1928 to the time of trial said he had frequent crying spells and wanted to do away with himself, said he was being persecuted and watched by the Government.

While at Sheridan Hospital in 1924 and 1925 insured conceived the notion that

he was being accused by someone of pounding his knee to make it hurt and that he had murderous and crucifying ideas.

In October, 1929, on an inquisition of lunacy by the County Court of Alamosa County, Colorado, insured was adjudged to be a mental incompetent. This was competent proof and entitled to some weight on submission of the case to the jury. Wigmore on Evidence (2d Ed.) Vol. 3, Sec. 1671.

These facts extracted from the general statement of facts lead, we think, to the conclusion that there was sufficient evidence in the case as made by the plaintiff to support a verdict in his favor. It can not be doubted on those facts that he was permanently disabled in mind as early as July, 1924, and ever thereafter. The defense contends that because of insured's work record he is not and has not been totally disabled. As to that, the court was misled and fell into serious error of fact. In stating the reasons to the jury for directing them to find a verdict for defendant, it said to the jury in reference to his employment by the Great Western Sugar Company: "The second time he worked there for a whole year, from November, 1926—for fourteen months to January, 1928, continuously." The error is attributable to the carelessness of the one witness on that subject. His testimony taken literally is in support of the court's statement, but as explained above the witness was in error in stating that the insured's second employment extended to January 31, 1928, whereas counsel now agree and so state in their briefs that that date should have been January 31, 1927. The time employed was two months instead of fourteen. Of course, there is no way of ascertaining whether the court would have directed verdict if it had known the true facts in that respect.

The Supreme Court in the Lumbra v. United States Case, 290 U.S. 551, 558, 54 S.Ct. 272, 275, 78 L.Ed. 492, said: "The phrase 'total permanent disability' is to be construed reasonably and having regard to the circumstances of each case."

Of course, there can be no sound reason why the same evidence may not establish both permanent and total disability, especially where it is disability of the mind. That seems to have been the situation in our late case United States v. Pritchard, 10 Cir., 95 F.2d 619, and in United States v. Cox, 5 Cir., 24 F.2d 944. Jagodnigg v. United States, D.C., 295 F. 916. We say it was at least a question for the jury as to whether the insured's type of insanity did or did not abide with him continuously notwithstanding the work record and thus render him totally disabled.

The validity of the appeal is attacked. It was not taken during the trial term, but there was an order of extension during the term giving appellant time within which to file a bill of exceptions. Subsequent like orders were made, each within the time given by the preceding order. Those orders were not brought up by the bill of exceptions, but they were certified as a part of the record proper. We agree with what is said in La Grotta v. United States, 8 Cir., 77 F.2d 673, 103 A.L.R. 527, on that subject.

Reversed and remanded with directions to grant a new trial.