**UNITED STATES of America,**
**Plaintiff,**

v.

**Lawrence Eugene WRAY, Defendant.**

**Crim. A. No. 23892–3.**

United States District Court,
W. D. Missouri, W. D.

Feb. 24, 1975.

J. Whitfield Moody, First Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Charles A. Gallipeau, Kansas City, Mo., for defendant Wray.

J. Arnot Hill, Kansas City, Mo., for surety Midland.

## FINAL JUDGMENT OF DEFAULT FOR PLAINTIFF

WILLIAM H. BECKER, Chief Judge.

This is a collateral proceeding in the above-entitled criminal action on a motion by the Government for judgment of default against the joint obligors on a secured appearance bail bond. The motion for default judgment was filed herein pursuant to Rule 46(e)(3) of the Federal Rules of Criminal Procedure, which provides, in part, that the liability of the obligors on a bail bond ". . . may be enforced on motion [for judgment of default] without the necessity of an independent action." The material facts are as follows.

Defendant was charged in an information[1] in one count of knowingly making a false written statement in connection with the acquisition of a firearm, all in violation of Sections 922(a)(6) and 924(a), Title 18, United States Code. Defendant was released on a $1,000 secured appearance bail bond. At his arraignment, the defendant entered a plea of guilty to the charge, upon which he was convicted on October 25, 1972. At that time, the defendant was initially sentenced and committed under Section 4208(b), Title 18, United States Code, for a maximum term of imprisonment to the custody of the United States Attorney General for a study and recommendation and return to this court for final sentencing. For the convenience of the defendant, on the same day execution of the initial sentence was originally stayed until November 8, 1972, and thereafter was further stayed until November 13, 1972, by order dated November 8, 1972. The circumstances surrounding the oral grant of the original stay are as follows:

"THE COURT: Now, I am willing to grant a stay of execution for a short period, if I get the defendant's assurance he isn't going to run again like he did when the Springfield Court gave him a stay for 30 days, and give him time to get his, try to get his business affairs in shape.

"THE COURT: What do you have to request in this way?

"MR. GALLIPEAU: He told me prior to coming into court, Your Honor, that he needed ten days to two weeks in order to wrap up his used car operation; that he simply had not been able to do so up to this time. He has a problem with, he tells me, a problem with automobile titles with the State that must be taken care of.

"THE COURT: I am not worried about the time. I am just worried about his assuring me that he is going to come back, because he is going to have a lot of trouble if he doesn't. I am required to make this study to impose the maximum of five years, and if he runs, in all likelihood it will

---

1. This criminal action was transferred to this District from the District of Wyoming pursuant to Rule 20 of the Federal Rules of Criminal Procedure.

never be reduced, and he will commit another offense by absconding from bail.

"THE DEFENDANT: All I can say is that I will return.

"THE COURT: All right. Execution of this sentence is stayed until 10:00 a. m., November 8, 1972, at which time the defendant shall surrender to the United States Marshal at Room 509, U.S. Courthouse, 811 Grand, Kansas City, Missouri. Defendant is ordered released until then on the currently filed bail bond which shall continue in force. Now, you understand, if you do abscond you will have committed another serious offense. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: If you don't show up here this time a warrant for your arrest will be issued and you will be severely prejudiced in the sentence finally to be imposed in this case."

The written order dated November 8, 1972, further staying execution, also directed that the defendant surrender to the United States Marshal for transportation to Springfield, Missouri, for a ninety-day study. At the completion of that study, the defendant was to be returned to this court with the report and recommendation for final sentencing.

The defendant did not surrender himself to the custody of the United States Marshal on November 13, 1972, as ordered by this Court. On December 6, 1972, forfeiture of the defendant's bail bond was ordered,[2] and an order was entered directing that a warrant for the arrest of the defendant issue forthwith. Thereafter, the earlier order of October 25, 1972, was vacated and the United States Marshal was directed to produce

the defendant for sentencing again on March 13, 1973.

On March 13, 1973, the defendant was again committed for the maximum term of imprisonment to the custody of the Attorney General for the purpose of a study and recommendation under the provisions of Section 4208(b), Title 18, United States Code.

On July 5, 1973, a final sentence of five years imprisonment was imposed upon the defendant under Section 4208 (a)(2), Title 18, United States Code.[3]

On April 20, 1973, counsel for the Government filed herein a "Motion for Judgment of Default," seeking an ". . . order of judgment of default against Lawrence Eugene Wray and Midland Insurance Company . . . for the $1,000 surety bond filed in the case of United States of America v. Lawrence Eugene Wray, No. 23892–3, which bond is secured by the Midland Insurance Company as surety. . . ." In response thereto, an order was entered by this Court on May 18, 1973, therein directing the defendant Lawrence Eugene Wray, Midland Insurance Company, and John T. Wheeler, local attorney for Midland Insurance Company, separately to show cause in writing why the motion for default judgment on the $1,000 surety bond should not be granted.

Thereafter, on June 4, 1973, counsel for Midland Insurance Company ("Midland" hereinafter) filed herein a response to the order to show cause, therein contending that Midland ". . . was not under obligation on the bond in question after judgment and sentence." In support thereof, counsel for Midland alleges that the "[s]urety in this case guaranteed that the defendant would appear for trial or plea or sentencing"; that "there were no conditions in the

---

2. The surety, Midland Insurance Company, failed to file a motion to set aside the forfeiture of the bail bond.

3. The defendant was later indicted for wilfully failing to appear in violation of Section 3150, Title 18, United States Code. That

indictment was dismissed on the grounds that failure to surrender to a United States Marshal for execution of a previously imposed sentence does not constitute a violation of Section 3150, Title 18, United States Code. *See*, United States v. Wray, 369 F. Supp. 118 (W.D.Mo.1973).

bond to provide for any liability after sentencing"; that the "defendant Lawrence Eugene Wray in the absence of a notice of appeal was not eligible to be released on bond or to have a bond set"; and that " . . . a defendant after being sentenced is normally a greater risk from the standpoint of surety than someone who has not as yet been sentenced, and that before a surety can be held liable under these circumstances, the surety should be notified and a new bond set just as is done in the event of appeal."

On June 12, 1973, counsel for the Government filed herein his "Response of United States of America to Midland Insurance Company's Statement," therein stating, among other things, that "[t]he bonding company, in the fulfilment (sic) of its obligations created by acting as surety for the bond executed by Lawrence Eugene Wray in this case, is presumed to know and keep itself advised of the status of the case as well as the location of the defendant at all times. The failure of the bonding company to notify the court or otherwise object to the release of the defendant at his request during the stays of execution of the sentence can only be regarded as acquiescence in the request of the defendant and action of the court."

Following the entering of an order on June 3, 1974, directing that a photocopy of the plaintiff's motion for judgment of default be served on the principal and surety, counsel for Midland filed herein on June 12, 1974, further suggestions in opposition to the motion for judgment of default. In the additional suggestions in opposition, counsel for Midland states, in part, as follows:

"It is the surety's contention that when defendant appeared for sentencing and had been sentenced, that surety's obligations on the bond were at an end. The very purpose of the bond on which the Midland Insurance Company was surety, was to guarantee the appearance of defendant at the proceedings against him up until sentence. At the time defendant was sentenced and a stay of execution of that sentence was granted to him, his surety had no opportunity to refuse to proceed as defendant's surety, although he would have had ample grounds to do so. A defendant under a sentence is a much greater risk than a defendant who has not as yet been sentenced, for a defendant not under sentence has the hope of parole. We suggest that at the time defendant failed to appear the Midland Insurance Company was no longer the surety on his bond and in fact, he was not released on a bond."

The specific conditions of the bail bond in the case at bar are as follows:

"The conditions of this bond are that the defendant Lawrence Eugene Wray is to appear before Calvin K. Hamilton, United States Magistrate for the Western District of Missouri, at Kansas City, Missouri, and in the United States District Court for the Western District of Missouri, at Kansas City, Missouri, and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by the magistrate or by the United States District Court for the Western District of Missouri, or any other United States District Court to which the defendant may be removed or the cause transferred; that the defendant is not to depart the Western District of Missouri, or the jurisdiction of any other United States District Court to which the defendant may be removed or the cause transferred after he has appeared in such other district pursuant to the terms of this bond, except in accordance with such orders or warrants as may be issued by the magistrate or the United States District Court for the Western District of Missouri, or the United States District Court for such other district; *that the defendant is to abide any*

*judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe."* (Emphasis added.)

Neither party has requested the opportunity to present any evidence or oral argument at a hearing on the motion for default judgment. This is understandable since the motion essentially raises only a question of law. That question is whether the liability of a surety on a continuing bail bond contract terminates with the pronouncement of sentence upon the defendant, even though the bail bond contains a specific condition requiring the defendant to abide any judgment entered by surrendering himself to serve any sentence imposed. This is a question upon which there exists a conflict of authority among a limited number of reported federal cases.

▆ A bail bond is an enforceable contract between the Government and the principal and surety to ensure the prompt appearance of a defendant during criminal proceedings as directed by the Court. United States v. D'Anna, 487 F.2d 899, 900 (6th Cir. 1973); Williams v. United States, 444 F.2d 742, 744 (10th Cir. 1971), cert. denied sub nom., United States Bonding Insurance Co. v. United States, 404 U.S. 938, 92 S.Ct. 275, 30 L.Ed.2d 250 (1971); United States v. Jackson, 465 F.2d 964 (10th Cir. 1972).

▆ In reviewing a bail bond, a court should be guided by the following principles of construction which have generally been applied to bail bond contracts. First, a bail bond contract must be interpreted in light of the applicable law of the state in which the contract was made. United States v. D'Anna, 487 F.2d 899, 900 (6th Cir. 1973); United States v. Gonware, 415 F.2d 82, 83 (9th Cir. 1969); Swanson v. United States, 224 F.2d 795, 15 Alaska 608 (9th Cir. 1955); Heine v. United States,

135 F.2d 914 (6th Cir. 1943); Palermo v. United States, 61 F.2d 138, 140 (8th Cir. 1932), cert. denied, 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933). Second, a bail bond contract is to be strictly construed in accordance with its own terms. United States v. D'Anna, 487 F.2d 899, 901 (6th Cir. 1973); United States v. Jackson, 465 F.2d 964, 965 (10th Cir. 1972); United States v. Eisner, 329 F.2d 410 (6th Cir. 1964). Third, like any other contract, a bail bond should be construed to give effect to the reasonable intentions of the parties. United States v. Gonware, 415 F.2d 82, 83 (9th Cir. 1969); United States v. D'Anna, 487 F.2d 899, 901 (6th Cir. 1973); Palermo v. United States, 61 F.2d 138, 142 (8th Cir. 1932), cert. denied, 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933).

▆ In this proceeding, the surety, Midland Insurance Company, contends that its obligation under the bail bond in question terminated when the defendant appeared for initial sentencing and was initially sentenced. By this contention, the surety apparently alleges that there was an implied legal change of control or custody by operation of law at the time the defendant was initially sentenced. No cases are cited by the surety in support of this contention. For reasons to be set forth hereinafter, it is concluded that the surety's contentions are without factual or legal merit.

▆ The persuasive authorities hold that the liability of bail terminates with the pronouncement of judgment or sentence upon the defendant, when the bail bond or recognizance *does not* contain a condition requiring the latter to abide the final order or judgment of the court, or, if convicted, to surrender himself in execution thereof. *See,* Bail: Stage of Proceedings at which Sureties are Discharged in Criminal Case, 20 A.L.R. 594, 629–635 and cases cited therein; 8 Am.Jur.2d § 105, p. 843 (1963) and cases cited therein. The bail bond in the case at bar contains the express and unequivocal condition that " . . . the defendant is to abide any

judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe." Such a condition imposes on the surety a liability under the bail bond which does not terminate at the time of sentencing, but continues until the defendant physically surrenders himself to commence service of his sentence. *Cf.* La Grotta v. United States, 77 F.2d 673, 103 A.L.R. 527 (8th Cir. 1935), cert. denied sub nom., Quigley v. United States, 296 U.S. 629, 56 S.Ct. 152, 80 L.Ed. 447 (1935); Detroit Fidelity & Surety Co. v. United States, 36 F.2d 682 (6th Cir. 1930). Absent a Missouri statute forbidding the inclusion of such a condition (and there is no such statute), there is no reason why this condition should not be treated as a valid and binding term of an enforceable bail bond contract. *Cf.* Berkowitz v. United States, 90 F.2d 881, 885 (8th Cir. 1937); Palermo v. United States, 61 F.2d 138 (8th Cir. 1932), cert. denied, 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933).

■ Further, the original stay of execution of the defendant's sentence did not constitute an unauthorized alteration of the terms of the bail bond, or otherwise release the surety from liability thereon. United States v. Gonware, 415 F.2d 82, 84 (9th Cir. 1969); United States v. Widen, 38 F.3d 517, 518 (N.D. Ill.1930); Detroit Fidelity & Surety Co. v. United States, 36 F.2d 682, 684 (6th Cir. 1930); La Grotta v. United States, 77 F.2d 673, 677 (8th Cir. 1935), cert. denied sub nom., Quigley v. United States, 296 U.S. 629, 56 S.Ct. 152, 80 L.Ed. 447 (1935); *see also*, Berkowitz v. United States, 90 F.2d 881, 884 (8th Cir. 1937). Unlike the factual circumstances present in Reese v. United States, 9 Wall. 13, 19 L.Ed. 541 (1870), the granting of the stay of execution in the case at bar was in accordance with the terms and conditions of the bail bond. In other words, the granting of the stay of execution did not constitute an unauthorized unilateral change

in the substantive character of the surety's obligation under the bond.

The surety Midland contends that "[a]t the time defendant was sentenced and a stay of execution of that sentence was granted to him, his surety had no opportunity to refuse to proceed as defendant's surety, although he would have had ample grounds to do so." This contention lacks merit for several reasons.

■ First, even though a bail bond may not provide for notice to a surety as to any orders entered by the Court, notice to a defendant constitutes imputed notice to the surety. Stuyvesant Insurance Co. v. United States, 410 F.2d 524, 526 (8th Cir. 1969); United States v. Caro, 56 F.R.D. 16, 19 (S.D.Fla.1972); *see also*, United States v. Egan, 394 F. 2d 262, 267 (2nd Cir. 1968), cert. denied sub nom., Stuyvesant Insurance Co. v. United States, 393 U.S. 838, 89 S.Ct. 116, 21 L.Ed.2d 109 (1968). "The surety does not have to be notified every time the principal is to appear in court but instead should keep itself posted on when the principal is to appear in order to keep itself informed of any changes made by the court in accordance with the terms and purpose of the bond." Stuyvesant Insurance Co. v. United States, 410 F.2d 524, 526–527 (8th Cir. 1969).

Second, ". . . it is a common practice in the federal courts as well as the state courts, for defendants to request and for courts to grant short stays of execution of sentence to allow defendants to put their affairs in order before they start to serve their sentence." United States v. Gonware, 415 F.2d 82, 84 (9th Cir. 1969). The surety in the case at bar does not and cannot plausibly state that this is not a common and recognized practice in this District Court.

Third, neither Missouri state law, nor federal law as applied in Missouri, prohibits the granting of a reasonable stay of execution and the release of a convicted defendant for a short period of

time following sentencing on the original appearance bail bond in accordance with the terms and conditions set forth therein. *See*, Rule 38, Federal Rules of Criminal Procedure; *see also*, Kinder v. Richeson, 264 S.W. 982, 983 (Mo.Sup. en banc 1924).

Although the surety Midland does not cite any cases in support of its suggestions in opposition to the motion for default judgment, a recent decision supporting the surety's position by the United States Court of Appeals for the Sixth Circuit should be discussed. In the case of United States v. D'Anna, 487 F.2d 899 (6th Cir. 1973), the defendant was released on a $10,000 secured appearance bond. The bond specified that the defendant appear to "answer to any indictment . . . and abide such order and determination as said Court may make . . . and . . . not depart said Court without leave thereof . . . ." The defendant entered a plea of guilty and was thereafter sentenced. The Court granted a one week stay of execution of the sentence and released the defendant on "continued bond." The defendant failed to surrender himself to commence service of his sentence as ordered by the District Court. The bond was ordered forfeited and the surety moved to set aside the forfeiture. The District Court denied the motion to set aside the forfeiture and the surety appealed.

The Court of Appeals reversed the decision of the District Court and held that "Michigan law clearly holds that bond can not be extended beyond the sentencing procedure without consent of the surety, and therefore, the District Court was in error when it ordered bond continued." United States v. D'Anna, 487 F.2d 899, 901 (6th Cir. 1973). The Court of Appeals agreed with the surety's contention that continuing the bond beyond sentencing would introduce increased risk factors not con-

templated by the parties when the bail bond contract was entered into.

The *D'Anna* case is factually and legally distinguishable from the case at bar. It is factually distinguishable because D'Anna's bail bond did not contain an express condition, as in the case at bar, that he abide any judgment ". . . by surrendering himself to serve any sentence imposed. . . . In addition, the bond in the case at bar specifically states that such bond " . . . is a continuing bond which shall continue in full force and effect until such time as the undersigned are duly exonerated." [4] The *D'Anna* case is further distinguishable because that case involved the construction and application of a bail bond made in Michigan. The Court of Appeals decision was expressly based on prior rulings by Michigan state courts. The bond in the case at bar was made in Missouri, and should be construed in the context of Missouri jurisprudence.

In this connection, it should be noted that, although there do not appear to be any Missouri state cases directly in point, a thorough review of the applicable and analogous Missouri state authorities supports the conclusions reached in this opinion.

In State v. Charles, 207 Mo. 40, 105 S.W. 609 (1907), the Missouri Supreme Court held that the defendant's appearance and plea of guilty satisfied the conditions of the bail bond and the sureties were released of liability. However, unlike the case at bar, the bond in the *Charles* case provided only that the defendant " . . . appear on the first day of the next term . . . to answer and defend the information filed, charging him with embezzlement, and not depart the court without leave . . . ." The Missouri Supreme Court noted that it was " . . . unwilling to take the advanced step and announce the rule that the risk of the sureties should be increased by holding

4. Rule 46(f) of the Federal Rules of Criminal Procedure pertinently provides in part, that "[a] surety may be exonerated by a deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody."

that the terms, 'answer and defend an information,' shall be interpreted to mean, not only answering the information, but as well to render obedience to the judgment and sentence of the court which may be rendered in the cause." State v. Charles, 207 Mo. 40, 105 S.W. 609, 612–613 (1907).

In one of the few other analogous state cases, the Missouri Supreme Court en banc in Kinder v. Richeson, 264 S.W. 982, 983 (Mo.Sup. en banc 1924), held that "[i]f the appearance bond may also be conditioned so as to cover not only the appearance and trial, but also the time the defendant is awaiting the pleasure of the court for sentence and judgment, most certainly a new bond could be taken after the verdict, conditioned for an appearance thereafter to receive sentence and judgment."

The terms of the bail bond contract in question are unambiguous. The bail bond contract expressly provides that the defendant surrender himself to serve any sentence imposed by this Court. The surety Midland cannot successfully contend herein that it did not fully understand the express terms of the bail bond contract. Under these circumstances, it is concluded that the liability of the surety on the bail bond did not terminate with the pronouncement of sentence upon the defendant. Therefore, the motion herein for default judgment should be granted.

For the foregoing reasons, the Government's motion for default judgment will be granted and final default judgment for the plaintiff and against the obligors will accordingly be entered. The entry of this default judgment, however, does not prevent the surety from filing an appropriate and timely motion for total or partial remission of the amount of the forfeiture pursuant to Rule 46(e)(4) of the Federal Rules of Criminal Procedure.

It is therefore

Ordered that the plaintiff's "Motion for Judgment of Default" be, and it is hereby, granted. It is further

Ordered and adjudged that the plaintiff have and recover, of and from the jointly and severally liable obligors, Lawrence Eugene Wray and Midland Insurance Company, the principal sum of $1,000.00 and the costs of this action and interest on the total sum at the rate of 6% per annum from the date of entry of this final judgment, for which said sums let execution issue. Jurisdiction of this action is hereby retained to enter such further orders as may be deemed appropriate by this Court.